1  ANDREW GOODMAN (State Bar No. 115685)
   GOODMAN FAITH, LLP
2  21550 Oxnard Street, Suite 830
   Woodland Hills, California 91367
3  Telephone: (818) 887-2500
   Facsimile:  (818) 887-2501
4
5  Attorneys for Debtor and Debtor-in-Possession

6

7              **UNITED STATES BANKRUPTCY COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
8                  **LOS ANGELES DIVISION**

9  In re                              Case No.:  11

10 COLOR SPECTRUM NETWORK,            Chapter:  2:11-bk-42383-ER

11                        Debtor.     **EMERGENCY MOTION OF DEBTOR**
                                      **FOR ENTRY OF INTERIM AND FINAL**
12                                    **DIP ORDERS (A) AUTHORIZING**
                                      **DEBTOR TO OBTAIN POST-PETITION**
13                                    **FINANCING; AUTHORIZING USE OF**
                                      **CASH COLLATERAL; (B) USING OF**
14                                    **CASH COLLATERAL; AND (C)**
                                      **GRANTING OTHER RELIEF UNDER 11**
15                                    **U.S.C. SECTIONS 105, 361, 363 AND 364,**
                                      **F.R.B.P. 2002 AND 4001; AND LOCAL**
16                                    **BANKRUPTCY RULES 2002-1 AND 4001-2;**
                                      **MEMORANDUM AND DECLARATION**
17                                    **OF GILBERT BONILLA IN SUPPORT**
                                      **THEREOF**
18
                                      Date:       [To Be Set]
19                                    Time:       [To Be Set]
                                      Place:      Courtroom 1568
20                                                Roybal Federal Building
                                                  255 E. Temple Street
21                                                Los Angeles, CA  90012

22 **TO THE HONORABLE EARNEST ROBLES, UNITED STATES BANKRUPTCY JUDGE, AR**

23 **FUNDING, THE OFFICE OF THE UNITED STATES TRUSTEE, ALL OTHER CREDITORS**

24 **WITH AN INTEREST IN THE DEBTOR'S ASSETS AND COLLATERAL, THEIR**

25 **RESPECTIVE ATTORNEYS OF RECORD AND TO ALL OTHER PARTIES IN INTEREST:**

26         Color Spectrum Network, Inc. ("CSN" or the "Company") hereby moves this Court, on an

27 emergency bases, for entry of an order (the "Interim Order"), approving certain post-petition

28 financing and use of cash collateral, and following a final hearing (the "Final Hearing"), requests

1  entry of a final order granting the relief requested herein (the "Final Order", and with the Interim

2  Order, the "Financing Orders").

3      By this Motion, CSN seeks interim and final approval of the post-petition financing (the

4  "DIP Facility") that it has negotiated with AR Funding ("AR") and use of AR's cash collateral,

5  substantially on the terms and conditions set forth in that certain Factoring Agreement (the

6  "Factoring Agreement"), a true and correct copy of which is attached hereto as Exhibit "A"

7      The Company is requesting that the Court set the hearing on this Motion at the earliest

8  possible time on whatever notice the Court may direct. The Company does not have sufficient

9  sources of working capital to carry on the operation of its business during the case without the

10  Factoring Agreement. Uninterrupted operations are critical to a successful reorganization and the

11  financing provided by the DIP Facility will ensure that the Company's vendors continue their

12  business relationship with an operating company and allow the Company to restructure its

13  business and confirm a plan of reorganization. To expedite the parties' consideration of this

14  Motion, the Company has already served a courtesy copy of this Motion on the parties identified

15  above by overnight mail (or, if consent was provided, by electronic mail).

16      This Motion is based on the attached Memorandum of Points and Authorities (the

17  "Memorandum"); the Declaration of Gil Bonilla attached hereto; and the arguments, evidence,

18  and representations that may be presented at or prior to the hearing on this Motion.

19      WHEREFORE, the Company respectfully requests that the Court (i) following the Interim

20  Hearing, enter the Interim Order approving the Factoring Agreement between the Company and

21  AR under sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (the

22  "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure 2002, 4001, 6004 and 9014 and

23  Local Bankruptcy Rules 4001-2, 2002-2 and 9013, on the terms set forth in the Factoring

24  Agreement (ii) approve the form and scope of notice of the Final Hearing and schedule the Final

25  Hearing on the Motion; (iii) following the Final Hearing, enter the Final Order; and (iv) grant

26  such other and further relief as may be just and proper.

DATED:  July 29, 2011                    GOODMAN FAITH, LLP

27

28                              By:_____/S/ ANDREW GOODMAN_____
                                    Andrew Goodman
                                    Attorneys for Debtor and Debtor-in-Possession

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

1.      Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code on July 29, 2011.  No trustee has been appointed; Debtor has retained possession of its assets and is operating and managing its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2.      CSN manufactures folding carton packaging for products that are sold predominantly in retail store environments. Software boxes, golf ball packages, cosmetic cartons, pharmaceutical boxes, etc.

3.      On or about December 10, 2009,  Debtor entered into an Agreement (the "Factoring Agreement") with Associated Receivables Funding ("AR").  A copy of the Factoring Agreement is attached hereto as Exhibit A.

4.      As part of the Factoring Agreement, the Debtor agreed to sell, transfer and assign and AR agreed to purchase all of Debtors accounts receivable. In addition, Debtor granted AR a security interest in all of Debtor's accounts receivable, contract rights, and such general intangibles which are directly related to said accounts, including those presently in existence and those acquired as well as all chattel paper and instruments evidencing any obligation to the Debtor for payment of goods sold or services rendered. (Factoring Agreement, Section 7). A true and correct copy of the UCC-1 financing statement is attached as Exhibit B.

5.      As of July 15, 2011 the Debtor owed the following sums to AR: (a) approximately $1,499,863.12; (b) interest accruing thereafter; and (c) for attorneys' fees and other costs pursuant to the terms of the Factoring Agreement. Total Accounts Receivable equal $1,844,699.69.

6.      The filing of the Chapter 11 petition by Debtor terminated AR's obligation to advance monies to the Debtor, to extend any other credit accommodations to the Debtor under the Factoring Agreement.

7.      In order to continue its operations the Debtor requires post-petition financing from AR under the Factoring Agreement and the continued use of AR's cash collateral in order to

1    enable it to remain operating.

2         8.    Subject to bankruptcy court approval, AR has expressed its willingness to allow

3    the Debtor to continue using its cash collateral on an interim basis and AR  has agreed to provide

4    additional post-petition factoring of accounts for Debtor's business operations on an interim basis

5    on certain terms and conditions, provided that AR is adequately protected for the Debtor's use of

6    cash collateral and receives adequate security in consideration for their agreement to allow the

7    Debtor to use the cash collateral.

8                                            **II.**

9                                          **NOTICE**

10        9.    Notice of the hearing on this Motion was provided to AR, the office of the United

11   States Trustee, any other party other than the Bank with an interest in any of the Debtor's

12   Collateral and Debtor's twenty (20) largest unsecured creditors.

13        10.    Debtor submits that the notice and opportunity for hearing upon this Motion is

14   "appropriate in the particular circumstances: within the meaning of section 102(1) of the

15   Bankruptcy Code.

16                                           **III.**

17                          **LOCAL RULE 4001-2 DISCLOSURES**

18        Local Rule 4001-2 requires that the Company highlight certain "extraordinary" provisions

19   contained within the DIP Financing Agreement or the Financing Orders being required in

20   connection with the Motion. These provisions are identified in Form F 4001-2 which is attached

21   hereto as <u>Exhibit C</u>. A true and correct copy of the proposed Interim Order is attached hereto as

22   <u>Exhibit D</u>.

23                                           **IV.**

24        **THE PROPOSED DIP FINANCING REPRESENTS THE BEST FINANCING**

25             **AVAILABLE TO THE COMPANY UNDER THE CIRCUMSTANCES**

26        As discussed in the Bonilla Declaration, the Company has been actively seeking a capital

27   infusion and/or additional financing. However, it has been hampered by a drop off in sales

28   revenue, a loss of one its largest customers and the lack of capital and financing in today's

1    economy. Based on its experience throughout the past year and after consulting with its financial

2    and legal advisors, the Company concluded that it would be extremely difficult, if not impossible,

3    to obtain financing from anyone other than its existing lender and its existing lender was also the

4    cheapest as far as cost.

5         After the Company presented AR with its plans for reorganization, AR agreed to provide

6    continued financing. The Company believes that the available financing represents its only real

7    opportunity to meet the various and urgent financing needs within the Company's time

8    constraints. As negotiated, the Factoring Agreement will enable the Company to purchase

9    inventory, compensate its employees, pay its post-petition creditors and maximize the value of its

10   business and operations. The Company's ability to reorganize or realize the maximum value for

11   its assets is dependent upon its ability to obtain the post-petition credit sought herein, and the

12   agreement with AR appears to be the only viable alternative available.

13        The Company negotiated the terms of the financing in good faith with all parties

14   represented by experienced counsel. The Company believes that the negotiated terms are fair and

15   reasonable under the circumstances of this case.

16        11 U.S.C. § 364(c) provides:

17             "If the trustee is unable to obtain unsecured credit allowable under
               section 503(b)(1) of this title as an administrative expense, the
18             court, after notice and a hearing, may authorize the obtaining of
               credit or the incurring of debt-
19                  (1)   with priority over any or all administrative expenses of the
                    kind specified in section 503(b) or 507(b) of this title;
20                  (2)   secured by a lien on property of the estate that is not
                    otherwise subject to a lien; or
21                  (3)   secured by a junior lien on property of the estate that is
                    subject to a lien."
22

23        The Debtor-in-possession had the burden of proof on the issue of adequate protection 11

24   U.S.C. § 364(2). Pursuant to the Factoring Agreement, the Debtor agreed to sell, transfer and

25   assign and AR agreed to purchase all of Debtors accounts receivable. In addition, Debtor granted

26   AR a security interest in all of Debtor's accounts receivable, contract rights, and such general

27   intangibles which are directly related to said accounts, including those presently in existence and

28   those acquired as well as all chattel paper and instruments evidencing any obligation to the

4

1     Debtor for payment of goods sold or services rendered. (Factoring Agreement, Section 7).

2         Post-Petition, Debtor will continue to sell, transfer and assign and AR will agree to

3     purchase all of Debtors accounts receivable. In addition, Debtor will grant AR a security interest

4     in all of Debtor's accounts receivable, contract rights, and such general intangibles which are

5     directly related to said accounts, including those presently in existence and those acquired as well

6     as all chattel paper and instruments evidencing any obligation to the Debtor for payment of goods

7     sold or services rendered.

8         In In re AAA Produce Co., Inc., 58 B.R.. 430 (Bankr. E.D. Mo. 1986), the court held that

9     the Debtor in Possession would be authorized to borrow money with all such indebtedness

10     secured by a first lien conferred by operation of Section 364(c)(2) on pre-petition and post-

11     petition property of the debtor, subject to valid and perfected liens and security interests existing

12     on the date Debtor filed its petition, where the debtor was unable to obtain unsecured credit, the

13     creditor indicated its willingness to lend money and extend credit to the debtor upon certain terms

14     and conditions, and no other party was known to claim an interest in pre-petition collateral.

15         In this case, prior to filing of its Petition, the President of the Debtor, Gil Bonilla,

16     attempted to obtain credit from several other sources besides the Bank. (Declaration of Gil

17     Bonilla).  While these other lenders were willing to lend to the Debtor, none of them were willing

18     to lend on as favorable terms as AR.  (Declaration of Gil Bonilla).

19         Since Debtor attempted to, but was unable to obtain other and/or better financing

20     elsewhere other than AR, since AR is willing to continue providing post-petition financing and

21     allow the Debtor to use the cash collateral, the Motion should be approved.

22 **V.**

23 **BASIS FOR RELIEF REQUESTED**

24     A.     **Emergency Consideration Of This Motion Is Appropriate**

25         Bankruptcy Rule 4001(c) governs the procedure for consideration of motions to obtain

26     post-petition financing. Subsection (c)(2) provides for an expedited consideration of the Motion:

27
28
> If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

5

1    Local Bankruptcy Rule 2081-1(a)(9) also provides for an expedited consideration of the Motion.

2        The factoring is needed to pay the Company's essential operating expenses. If the

3    Company is not authorized to obtain financing under the Factoring Agreement on an interim and

4    final basis, the Company will be unable to purchase inventories, goods and services, meet the

5    needs of customers or pay their ordinary operating expenses. Without the proposed financing,

6    therefore, the Company will be unable to preserve its value as a going concern pending the

7    restructuring of its business and consummation of its plan.

8        **B.    Approving the Factoring Agreement Is Appropriate**

9        As a debtor in possession, the Company is authorized to operate its business under section

10    1108 of the Bankruptcy Code. As part of that operation, the Company may incur unsecured debt

11    in the ordinary course of business. See, 11 U.S.C. Section 362(a). The Bankruptcy Code offers a

12    debtor in possession additional flexibility to the extent it needs additional credit, but cannot attract

13    such credit on unsecured terms. Section 364 provides a progression of various protections to

14    induce a post-petition lender to extend credit to a debtor in possession. In this case, the only

15    lender who is likely to provide any kind of financing to the Company and certainly the only one

16    able to do so in time to fund the Company's payroll and immediate post-petition expenses. The

17    Company does not have sufficient sources of working capital to carry on the operation of its

18    business during the case without the financing available through the Factoring Agreement.

19    Uninterrupted operations are critical to a successful reorganization and the financing provided by

20    AR will ensure that the Company's vendors continue their business relationship with an operating

21    company and allow the Company to continue operating. Because a successful reorganization

22    process will require the Company to maintain its ongoing operations until the process has been

23    completed, the relief requested in the Motion is essential to preserving the Company's estate. The

24    terms and conditions of the proposed financing, as set forth herein, are fair and reasonable under

25    the circumstances.

26        **C.    The Financing Is Supported By the Exercise of Sound Business Judgement**

27            **and Good Faith**

28        The fact that the Company has satisfied the requirements of Section 364 of the

6

Bankruptcy Code, of course, does not end the inquiry, as these sections are permissive, not mandatory. See, 11 U.S.C. Section 364(c) and (d)(1) ("after notice and a hearing", the court "amy authorize the obtaining of credit or the incurring of debt") (emphasis added). Generally, however, courts give broad deference to business decisions of a debtor in possession. In re Defender Drug Stores, Inc., 145 B.R. 312, 317 (BAP (9th Cir. 1992); Richmond Leasing v. Capital Bank, N.A. 762 F.2d 1303, 1311 (5th Cir. 1985). Moreover, a bankruptcy court generally will respect a debtor in possession's business judgment regarding the need for and the proposed use of funds. As the court noted in In re Ames Department Stores, Inc.,

> "[T]he court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it it to benefit a party-in-interest.[1]

The power of the debtor in possession to incur secured debt follows necessarily from the general power of the debtor in possession to operate its business in the exercise of its business judgment pursuant to section 1108 of the Bankruptcy Code. Without the ability to incur secured debt, the debtor in possession would be placed at a significant competitive disadvantage and its efforts to reorganize could be seriously impaired.

In the present case, the Company's decision to enter into the financing agreement represents an exercise of sound business judgment in the continued operation of the Company's business and preservation of its going concern value and the possibility of reorganization. Moreover, the terms of the proposed transaction are fair, reasonable, and adequate given the circumstances of the Company. The financing should provide the Company with sufficient capital to operate its business in the ordinary course pending the formulation and confirmation of a plan of reorganization.

## VI.

## REQUEST FOR FINAL HEARING

Pursuant to Bankruptcy Rule 4001(c), the Company respectfully requests that the Court schedule a Final Hearing no later than twenty (20) days from the date that the Court enters the

---

[1] 115 B.R. at 40.

7

1  Interim Order. The Company's request for interim approval of the Factoring Agreement is

2  intended to provide an amount of cash sufficient to permit the Company to continue to operate

3  during the near term and maintain their operations and the confidence of their vendors and

4  employees. In order to maintain operations and confidence of vendors and employees, the

5  Company would request prompt final approval of the Factoring Agreement.

6          The Company requests that it be permitted to serve notice of the Motion and Notice of the

7  Final Hearing by telecopy, overnight delivery service, hand delivery or U.S. mail to (a) the United

8  States Trustee; (b) the Twenty Largest Unsecured Creditors as set forth in the list filed by

9  Company pursuant to Bankruptcy Rule 1007(d), (e) all other known holders of liens on the

10  Company's assets and (f) on the applicable state and local taxing agencies. The Company

11  requests that the Court determine such notice to be good and sufficient notice of the Final Hearing

12  under Bankruptcy Rule 4001.

13                                          **VII.**

14                  **WAIVER OF BANKRUPTCY RULE 6004(h)**

15          The Company further seeks a waiver of any stay of the effectiveness of the Interim Order.

16  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property

17  other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless

18  the court orders otherwise." As set forth above, authorizing the factoring agreement on an interim

19  basis is necessary to provide the Company with sufficient working capital to carry on the

20  operation of its business. Accordingly, the Company submits that ample cause exists to justify a

21  waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

22                                          **VIII.**

23          **DEBTOR SHOULD BE ALLOWED TO USE CASH COLLATERAL**

24          **AS ALL SECURED PARTIES ARE ADEQUATELY PROTECTED**

25          11 U.S.C. § 363(a) defines "cash collateral" as cash, negotiable instruments, documents of

26  title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate

27  and an entity other than the estate have an interest. Cash collateral also includes the proceeds,

28  products, offspring, rents, or profits of property subject to a security interest as provided in

1    section 552(b) of the bankruptcy code, whether existing before or after the commencement of a

2    case under title 11.

3        A Debtor in possession may not use, sell, or lease cash collateral unless each entity that

4    has an interest in such cash collateral consents or the court, after notice and a hearing. 11 U.S.C. §

5    363(b)(2). Lastly, pursuant to 11 U.S.C. § 363(e), at any time, on request of an entity that has an

6    interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the

7    court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary

8    to provide adequate protection of such interest."

9        Adequate protection is defined in 11 U.S.C. § 361 as follows:

10       When adequate protection is required under Section 362, 363, or
     364 of this title, of an interest of an entity in property, such
11   adequate protection may be provided by  (1)  requiring the trustee
     to make a cash payment or periodic cash payments to such entity, to
12   the extent that the stay under Section 362 of this title, use, sale, or
     lease under Section 363 of this title, or any grant of a lien under
13   Section 364 of this title results in a decrease in the value of such
     entity's interest in such property; (2)  Providing to such entity an
14   additional or replacement lien to the extent that such stay, use, sale,
     lease or grant results in a decrease in the value of such entity's
15   interest in such property; or (3)  Granting such other relief, other
     than entitling such entity to compensation allowable under Section
16   503(b)(1) of this title as an administrative expense, as will result in
     the realization by such entity of the indubitable equivalent of such
17   entities interest in such property."

18       In many cases the existence of equity above the secured party's interest ("equity cushion")

19   may provide adequate protection. In re Dunes Casino Hotel 69 Bankr. 784 (Bankr. D.N.J. 1986).

20   Whether an equity cushion provides adequate protection to a creditor is determined on a case-by-

21   case basis rather than by mechanical application of a formula.  In re Kost, 102 Bankr. 829, 831

22   (Bankr. D.Wyo. 1989).

23       In In re Mellor, 734 F.2d 1396, the Court in discussing the meaning of "adequate

24   protection" stated as follows:

25       "While the term "adequate protection" is not defined in the Code,
     11 U.S.C. § 361 sets forth three non-exclusive examples of what
26   may constitute adequate protection: 1) periodic cash payments
     equivalent to decrease in value, 2) an additional or replacement lien
27   on other property, or 3) other relief that provides the indubitable
     equivalent (citation omitted)." Id at 1400.
28

1      The Court went on to discuss the existence of an equity cushion as a method of adequate

2 protection stating:

3          "Although the existence of an equity cushion as a method of
adequate protection is not specifically mentioned in Section 361, it

4 is the classic form of protection for a secured debt justifying the
restraint of lien enforcement by a bankruptcy court (citation

5 omitted).  In fact, it has been held that the existence of an equity
cushion, standing alone, can provide adequate protection."  Id at

6 1400.

7      In Footnote (2), the Court defined equity cushion as the value in the property, above the

8 amount owed to the creditor with a secured claim, that will shield that interest from loss due to

9 any decrease in the value of the property during time the automatic stay remains in effect.  Id at

10 1400; see also, In re Roane, 8 Bankr. 997, 1000, (Bankr. E.D.Pa. 1981), aff'd., 14 Bankr. 542

11 (Bankr. E.D.Pa. 1981).

12      In this case the Debtor seeks to use AR's cash collateral. Debtor agrees to agree to

13 continue to abide by the terms of the Factoring Agreement, transferring, assigning and selling its

14 accounts receivable to AR. The total amount of accounts receivable is equal to $1,844,699.69

15 while AR is owed, as of the filing of the Petition, $1,499,863.12. Thus, AR is adequately

16 protected.

17 **IX.**

18 **<u>CONCLUSION</u>**

19      Based on the above, Debtor respectfully requests that the Court enter an Order authorizing

20 and approving the Interim Stipulation for Post-Petition Financing and Use of Cash Collateral;

21 authorizing Debtor to execute any additional documentation as may be necessary to effectuate the

22 Interim Stipulation; authorizing use of cash collateral as set forth herein and the Interim

23 Stipulation; and granting such other and further relief as the Court may deem just and proper.

24

25 DATED:  July 29, 2011                GOODMAN FAITH, LLP

26                              By:   /S/ANDREW GOODMAN_____

27                                   Andrew Goodman
Jeremy Faith

28                      Attorneys for Debtor and Debtor-in-Possession

## DECLARATION OF GILBERT BONILLA

I, Gilbert Bonilla, declare as follows:

1.      I am the President of Color Spectrum Network, Inc., a California Corporation, the Debtor and Debtor-in-Possession herein (the "CSN" or the "Company").

2.      I am familiar with the facts set forth herein and if called as a witness I could and would competently testify thereto.  I have reviewed the foregoing motion and each of the facts stated therein are true and correct to the best of my knowledge.

3.      CSN filed its voluntary petition (the "Petition") under Chapter 11 of the United States Bankruptcy Code on July 29, 2011.  No trustee has been appointed.  CSN has retained possession of its assets and continues to operate and manage its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.      CSN manufactures folding carton packaging for products that are sold predominantly in retail store environments. Software boxes, golf ball packages, cosmetic cartons, pharmaceutical boxes, etc.

5.      On or about December 10, 2009,  CSN entered into an Agreement (the "Factoring Agreement") with Associated Receivables Funding ("AR").  A copy of the Factoring Agreement is attached hereto as Exhibit A.

6.      As part of the Factoring Agreement, the Company agreed to sell, transfer and assign and AR agreed to purchase all of its accounts receivable. In addition, the Company granted AR a security interest in all of the Company's accounts receivable, contract rights, and such general intangibles which are directly related to said accounts, including those presently in existence and those acquired as well as all chattel paper and instruments evidencing any obligation to the Company for payment of goods sold or services rendered. (Factoring Agreement, Section 7). A true and correct copy of the UCC-1 financing statement is attached as Exhibit "B".

7.      As of July 15, 2011 the Company owed the following sums to AR: (a) approximately $1,499,863.12; (b) interest accruing thereafter; and (c) for attorneys' fees and other

costs pursuant to the terms of the Factoring Agreement. Total Accounts Receivable are $1,844,699.69.

8.      The filing of the Chapter 11 petition by CSN terminated AR's obligation to advance monies to CSN, to extend any other credit accommodations to the Debtor under the Factoring Agreement. (Factoring Agreement, Section 15).

11.      In order to continue its operations the Company requires post-petition financing from AR under the Factoring Agreement and the continued use of AR's cash collateral in order to enable it to remain operating.

12.      Subject to bankruptcy court approval, AR has agreed to continue providing post-petition factoring of the Company's accounts receivable and allow the Company to continue using its cash collateral on an interim basis under the terms and conditions set forth in the Factoring Agreement, a copy of which is attached as Exhibit "A"., provided that AR is adequately protected for the Company's use of cash collateral and receives adequate security in consideration for their agreement to allow the Company to use the cash collateral.

9.      As stated above, AR has a lien on all accounts receivable.  As of July 15, 2011, the accounts receivable were valued at $1,844,699.69.

10.      In order to continue its operations, the Company requires the use of the Bank's cash collateral and further requires additional post-petition financing under the Factoring Agreement in order to enable the Company to remain operating.  The Company cannot continue to purchase inventory, supplies or pay bills or its employees without the consent of AR. Since all of the Company's receivables and have been sold to AR as security, without post-petition financing and use of cash collateral, the Company would have to close its doors, terminate its employees and its assets would be liquidated by its creditors.

11.      I have discussed with AR their providing post-petition financing in the form of the Factoring Agreement. These negotiations were ongoing and it was not until approximately July 15, 2011 that AR finally agreed to provide additional financing under the terms and conditions set forth in the Factoring Agreement. The terms will be the same post-petition as they were pre-petition.

A.    The Company will sell transfer and assign to AR as absolute owner and AR will purchase certain accounts receivable created by the Company's sales or services to customers.

B.    All sales will be made in the Company's name with notification to customers that the accounts receivable has been assigned, sold and transferred to AR.

C.    AR may advance money against accounts or invoices not exceeding the credit limit by AR.

D.    AR shall purchase $500,000.00 per calendar quarter from the Company and that the maximum amount outstanding in unpaid invoices at any one time shall not exceed $2,800,000.00. The purchase price is to be calculated on the average daily balance of net funds employed of the receivables accepted by AR, calculated on the most favorable terms given to the Company, based on the rate equal to 1.5% for a period of twenty five days.

E.    The Company grants AR a security interest in all of the Company's accounts receivable, contract rights, and such general intangibles which are directly related to said accounts.

F.    The Company will submit certain financial information to AR including monthly profit and loss statements. AR shall have the right to inspect the Company's books and records.

G.    Either party may terminate the agreement as to future transactions on ninety (90) days written notice.

12.    Prior to filing the Petition, I approached other lenders in an effort to obtain additional or alternative financing for the Company.  The names of the lenders are: Celtic Capital in Los Angeles and First Capital in San Clemente.  I informed each of these lenders that I had financing through AR and that I was trying to find alternative financing to pay off AR as well as give the Company sufficient capital to operate without having to file a bankruptcy proceeding.

13

13.    Unfortunately, no lender was willing to provide financing on a more favorable basis than AR. AR's terms and conditions were the most favorable of any possible lender.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of July at Glendora, California.

Gilbert Bonilla

**STATE OF SOUTH CAROLINA**              )

                                        )              **AGREEMENT**

**COUNTY OF GREENVILLE**

    THIS AGREEMENT, made on the 29th day of July, 2011, by and between Associated Receivables Funding, Inc., a South Carolina corporation, having its principal office in the County of Greenville, State of South Carolina, herein referred to as "A/R Funding" and Color Spectrum, Network, Inc., Debtor-in-Possession ("Client"), of Glendora, County of Los Angeles, State of California.

## RECITALS

1. Client is engaged in the general business of specialty package manufacturing and printing and normally sells and delivers merchandise and/or services to customers on a credit basis.
2. Client desires to obtain operating funds for operation of its business by selling and assigning its accounts receivable.
3. A/R Funding is willing to purchase certain of Client's accounts receivable, as approved by A/R Funding, according to the terms set forth herein.
4. Client is a debtor in Chapter 11 proceedings assigned case number 2:11-42383 (the "Case") pending in the United States District Court for the Central District of California (the "Court"). The Case was commenced on July 29, 2011 (the "Petition Date"). Since the Petition Date, Client has been operating its business as a Debtor-in-Possession pursuant to Chapter 11 U.S.C. § 101 *et. seq.* (the "Bankruptcy Code").
5. This Agreement is, in all respects, subject to the approval of the Court, by Order issued in the Case.
6. This Agreement amends, supersedes and replaces the prior Agreement of A/R Funding and Client dated December 10, 2011, to the extent this Agreement confers additional rights on A/R Funding may have had under the Agreement dated December 10, 2011, including collection rights and security interests, all of which shall remain fully enforceable notwithstanding this Agreement.

In consideration of the mutual covenants set forth herein, the parties agree as follows:

## SECTION 1.

## ASSIGNMENT OF ACCOUNTS RECEIVABLE

Client hereby sells, transfers and assigns to A/R Funding as absolute owner, and A/R Funding hereby purchases and accepts from Client, except as set forth hereafter, certain accounts receivable now or hereafter created by Client's sales or services to customers acceptable to and approved by A/R Funding and represented by Client to be *bona fide* existing obligations of its customers arising out of and acquired by it in its ordinary course of its business, which receivables are or will be due and owing to Client without defense, offset or counterclaim.

## SECTION 2.

## SALES AND DELIVERY OF MERCHANDISE OR SERVICES

All sales and delivery of merchandise or performance of services by Client will be made in its name with notification to customers that the accounts receivable (the phrase "accounts receivable" shall include all accounts, notes, and trade acceptances as defined in Article 9 of the Uniform Commercial Code as codified by the State of South Carolina.), thus created have been assigned, sold, and transferred to A/R Funding in absolute Ownership. Invoices and statements to customers are to be prepared by Client in a manner and on forms approved by A/R Funding and A/R Funding has the right and privilege to send such invoices or statements to customers, with the cost of postage charged to the account of Client. All invoices are to be clearly marked in a manner specified by A/R Funding, giving full notification to the customer that the account is payable to A/R Funding at its office in Greenville, South Carolina. Each invoice shall bear the terms contained in the original order and no change from the original terms of sale shall be made without A/R Funding's prior written consent. A/R Funding has the right to institute and maintain actions in its name or otherwise to collect such accounts, and those actions shall be at the cost of Client.

## SECTION 3.

## ASSUMPTION OF CREDIT RISK

A/R Funding, at its option, may advance money against accounts or invoices not exceeding a credit limit to be established by A/R Funding. If an unadjusted claim or dispute delays the payment of an account when due, the amount thereof may be charged back to Client as of the day of the original credit; such charge back will not be a reassignment of the account receivable and A/R Funding will retain a security interest in the account receivable as security for all of Client's obligations to A/R Funding. Client will report to A/R Funding all rejections and all returns of merchandise and customers claims immediately upon learning thereof, and will promptly adjust claims and disputes with customers at Client's own expense. Should any such returned merchandise come into the possession of Client, Client agrees to notify A/R Funding immediately and to hold such goods in trust, at Client's sole risk and expense, for and on behalf of A/R Funding, and to turn over such goods to A/R Funding upon A/R Funding's request unless the amount credited to Client by reason of the sale of such merchandise is repaid or otherwise secured to A/R Funding in a manner satisfactory to A/R Funding; further, A/R Funding shall have the right to sell the returned merchandise at private or public sale at Client's expense. Furthermore, A/R Funding shall have the right at all times to settle, compromise or litigate disputes or claims directly with Client's customers upon such terms and conditions as A/R Funding may deem advisable and to sell or cause to be sold without notice to Client any rejected or returned goods at such prices and to such customers and upon such terms as A/R Funding may deem advisable. If the amount received from such sale, less the costs and expenses of the sale, is less than the amount advanced on invoice represented by the merchandise, then Client shall be charged with such deficiency and A/R Funding shall have full recourse against Client for such deficiency.

## SECTION 4.

## PURCHASE PRICE

Client will provide A/R Funding with an assignment of receivables, satisfactory to A/R Funding, together with the original or true copies of invoices or statements, as may be specified by A/R Funding, conclusive evidence of shipment, or other instruments or papers that A/R Funding may require. The purchase price is to be calculated on the average daily balance of net funds employed of the receivables accepted by A/R Funding, calculated on the most favorable terms given to customer, based on the a rate equal to One and Fifty One Hundredth's percent (1.50%) for a period of twenty five (25) days. At A/R Funding's option, an invoice may be funded for three (3) additional twenty five (25) day periods at the stated discount rate, subject to proration of fee to the date of payment. "Net Funds Employed" means average daily balance outstanding against the available amount of such receivables less any discounts, reserve amounts, and/or allowances of any nature. A/R Funding shall pay Client, or credit Client with the purchase price of such receivables, less any monies remitted, paid, or otherwise advanced by A/R Funding for the account of Client or reserves. The Client hereby agrees that in the event the prime rate as published by The Wall Street Journal should increase above 3.25 percent, the rate increase shall be borne by the Client by proportionately adjusting the basic rate of 1.50 percent.

A/R Funding will remit to Client on request, and shall have the privilege of remitting at any time, the proceeds of sales as they are made, or any amounts standing to Client's credit. However, to protect A/R Funding against possible returns, claims, allowances, expense, or other items properly chargeable to Client's account hereunder, A/R Funding may reserve an amount equal to fifteen percent (15%) of the face amount of the receivables, which amount is considered reasonably necessary to cover such contingencies. Such reserve accounts shall never be less than fifteen percent (15%) of the outstanding receivables. Within two (2) days of receiving payment, A/R Funding will make available to Client the reserves held on individual paid receivables less deductions by customers, any unpaid compensation, charges or expenses, and any invoices that A/R Funding has not been paid within 90 days of billing date or when A/R Funding determines the invoice to be in dispute or not payable, whichever is earliest. These amounts will be remitted to Client upon the next assignment of invoices.

It is further understood and agreed by and between the parties hereto that the minimum amount to be purchased shall be the sum of $500,000.00 per calendar quarter. In the event the amount purchased in any calendar quarter should be less than $500,000.00, the discount rate stated herein, nevertheless, shall be calculated on the quarterly minimum sum herein stated. It is further understood and agreed that the maximum amount outstanding in unpaid invoices at any one time shall not exceed $2,800,000.00.

## SECTION 5.
## BOOK ENTRIES

Immediately on the purchase of an account by A/R Funding, Client will make appropriate entries upon its books disclosing such purchase, and will execute and deliver all papers and instruments and do all things necessary to effectuate this agreement.

## SECTION 6.
## AMOUNTS OWED TO A/R FUNDING

Amounts owed by Client to A/R Funding for commission, interest or otherwise are considered as advances against Client's sales and are chargeable to Client's current account at any time at A/R Funding's option. If at any time A/R Funding shall be required to pay any state, federal, or local sales or excise tax on sales or services performed hereunder, the amount of the tax so paid by A/R Funding shall be charged to Client's account. In the event A/R Funding is required to pay any taxes hereunder, A/R Funding shall promptly notify Client of such payment.

## SECTION 7.
## SECURITY INTEREST

Client hereby agrees to grant A/R Funding a security interest in all of Client's accounts receivable, contract rights, and such general intangibles which are directly related to said accounts (whether in the form of bills of lading, invoices, purchase orders, or any other documents), including those presently in existence and those acquired hereafter, as well as all chattel paper and instruments evidencing any obligation to the Client for payment of goods sold or services rendered. This security interest shall be a continuing interest and the collateral securing the payment to Client of all accounts transferred to A/R Funding shall be covered by said security interest agreement. In the event payment is not made to A/R Funding on any accounts transferred to A/R Funding or any amounts due and owing to A/R Funding, or in the event the Client defaults under the Uniform Commercial Code or any other provisions of this agreement, A/R Funding shall have all of the rights of the Client under the Uniform Commercial Code and shall have the right to take all actions necessary, including legal actions against Client's customers or others, in order to collect accounts assigned to A/R Funding by Client. In the event of any default on the part of the Client on any of the provisions herein, or should A/R Funding be required to take legal action to collect any of the accounts assigned to A/R Funding by Client hereunder, the Client agrees to pay attorneys fees and legal costs that may be incurred as a result thereof.

In addition to accounts receivable and all of the proceeds thereof, Client also assigns to A/R Funding all right, title, interest and grant(s) to A/R Funding as security interest in, a general lien upon and/or right of set-off in the following collateral to secure all of Client's present and future obligations and indebtedness to A/R Funding: All returned, repossessed and reclaimed goods, and books and records relating thereto, all letters of credit, deposits, money savings, hold amounts, reserves, retainage, credits, non factored receivables or like accounts maintained at or property delivered to A/R Funding.

## SECTION 8.
## INDEMNITY

Client shall at all times defend and indemnify A/R Funding against all actions, proceedings, claims, demands, losses, outlays, damage, or expenses, including legal fees and costs, that A/R Funding may incur in any way in defending or prosecuting, settling, or discontinuing any proceedings, actions, or claims in consequence of or arising in any way out of merchandise losses or claims, whether for breach of contract, failure to deliver merchandise, rejection of

merchandise for any reason whatsoever, damage, destruction or loss of merchandise (partial or total), breach of warranty (express or implied), or claims arising out of purchases, sales, transportation, collections on insurance, care, or custody of such merchandise sold by Client from the time such merchandise was ordered until the same is finally

paid for by a purchaser approved under the terms of this contract. Client shall also indemnify A/R Funding against any loss or liability, including attorney fees and costs, resulting from any acts or omissions of Client or its agents or employees in connection with the goods, or the sales thereof. Client agrees that A/R Funding shall in no way be liable for any damage to or loss of any goods or merchandise in Client's possession, whatever may be the cause of such damage or loss.

## SECTION 9.

## WARRANTY OF ASSIGNMENT

Client further warrants that none of the accounts being sold and assigned to A/R Funding have heretofore been sold, transferred or pledged or assigned to any person, firm, or corporation and will not be sold, transferred or pledged or assigned at any time during the term of this agreement without the prior written agreement of A/R Funding, except for sales of inventory in the ordinary course of business. Client further makes the following express warranties and representations, in addition to those implied by law or custom:

    (1) That said invoices are exactly what they purport to be on their face, not being forgeries or fictitious but genuine in every respect.

    (2) That the same do not have any defenses existing against them, except those appearing on their face, and have not been compromised in any manner.

    (3) That the Client will do nothing to interfere with the collection of same.

    (4) That the Client is the owner of same and has good, legal right to sell or assign same. A/R Funding shall have the right to investigate and approve each individual invoice, and A/R Funding shall not be obligated to accept any assignment unless and until that assignment is approved by A/R Funding.

    (5) That the Client has paid all taxes and Worker's Compensation Insurance, which have become due and payable.

    (6) That there are no judgments, assessments or liens filed against Client or any property, real or personal, of Client.

## SECTION 10.

## WARRANTY OF SOLVENCY

Client warrants solvency, and should it receive any checks, drafts, notes, acceptances, other moneyed instruments, or cash in payment of any of the receivables assigned to A/R Funding hereunder, such payment will immediately be turned over to A/R Funding in its original form. A/R Funding, or such persons as it may from time to time designate, shall have the right to endorse all such instruments in Client's name or otherwise.

## SECTION 11.

## PROFIT AND LOSS STATEMENT

Client will submit to A/R Funding, monthly and at A/R Funding's request, a profit and loss statement signed by an officer or employee of Client in behalf of and as the act of the Client within 20 days after the close of each month, covering the business for the month immediately preceding the statement. In addition, Client will furnish A/R Funding a semi-annual balance sheet on Client's business, accompanied by a profit and loss statement from the beginning of Client's then current fiscal year. Such annual balance sheet and accompanying profit and loss statement shall be prepared by an independent certified public accountant, accounting practitioner, or bookkeeper approved by A/R Funding, who has no pecuniary interest in Client's business. All the books, records, accounts, corporate records, bank statements, and records of deposit of Client, as well as any other financial records maintained by Client, shall be open to inspection by A/R Funding, and any accountant or auditor designated by A/R Funding, for all purposes and at all times during normal business hours at Client's main place of business.

## SECTION 12.

## LIMITED POWER OF ATTORNEY

Client hereby constitutes Brian K. Holden, or any other person whom A/R Funding may designate, as Client's attorney in fact with power to receive, open, and take action on all mail addressed to Client; to notify postal

authorities to change the address for delivery of mail addressed to Client to such address as A/R Funding may designate; to endorse in Client's name any notes, acceptances, checks, drafts, money orders, and other commercial papers and documents evidence of payment or collateral that may come into A/R Funding's possession, to sign Client's name on any invoice or bill of lading relating to any account, on drafts against debtors, assignments and verifications of accounts to any debtor; and to do all other acts and things necessary to carry out this agreement. All acts of such attorney or designee are hereby ratified and approved, and such attorney or designee shall not be liable for any acts of commission or omission, nor for any error of judgment or mistake of law or fact. This power, being coupled with an interest, is irrevocable while any purchased account shall remain unpaid.

## SECTION 13.

## BREACH OF WARRANTY

If any warranty or covenant herein, express or implied, shall be broken or violated, whether caused by the act or the fault of Client, a debtor, or others, A/R Funding shall be entitled to recover from Client or Client's guarantors the damages thereby sustained, including, but not limited to, all attorney's fees and costs, collection charges, and all other expenses that may be incurred by A/R Funding to enforce payment of any account, either as against the debtor, Client, or it guarantors, or in the prosecution or defense of any action or proceeding related to the subject matter of this agreement.

## SECTION 14.

## WAIVER

A/R Funding's waiver of a particular breach by Client of any covenant or warranty herein contained shall not be deemed to constitute a waiver of any subsequent breach. A/R Funding's failure at any particular time to exercise a right or privilege granted to it herein shall not be deemed to constitute a waiver of such or any other right or privilege.

## SECTION 15.

## TERMINATION

Either party may terminate this agreement as to future transactions on ninety (90) days' written notice. However, the requirement as to minimum amounts to be factored as set out above will apply during the notice period and until the contract is terminated. In the event, the Client terminates the contract by giving written notice and fails to maintain the minimum amounts to be factored during the notice period, or any portion thereof, a termination fee based upon 90 days will be charged based upon the minimum amounts to be factored in this agreement. If factoring continues during the notice period and the minimums are met, no termination fee will be charged. Not withstanding the foregoing, this agreement may be terminated immediately at any time and without notice by A/R Funding should:

(1) Client become insolvent, seek any relief under the Bankruptcy Code or any similar insolvency law.
(2) Client be the subject of a petition thereunder.
(3) Client call a meeting of creditors.
(4) Client breach any warranty or representation contained herein or violate any term or provision of this agreement.
(5) Client make an assignment for the benefit of creditors.
(6) Client suspend its business, fail or be unable to pay its debts when due or suffer the appointment of a receiver or custodian.
(7) A/R Funding receive notice of a federal or state tax lien, levy or assessment, or if A/R Funding becomes aware that there is a deficiency in the payment of any federal or state taxes, whether or not a lien has been filed with respect to such taxes.
(8) A/R Funding reasonably determine in good faith that it is insecure with respect to the payment of all or any part of Client's obligation.

Should any of the above events of default occur, a ninety (90) day termination fee will be charged based upon the minimum amounts to be factored in this agreement.

Upon the effective date of termination, all obligations of Client to A/R Funding shall become immediately due and payable without further notice or demand irrespective of any maturity dates established prior thereto. In addition, all the terms, provisions and conditions hereof, including the security interests herein granted to A/R Funding shall continue to remain in full force and effect until all Client's obligations to A/R Funding are paid in full. In the event A/R Funding shall cease to act as A/R Funding for Client, Client agrees to furnish A/R Funding with indemnity satisfactory to A/R Funding that will protect A/R Funding against possible charges to Client under the terms of this

Agreement and with release satisfactory to A/R Funding of all claims Client may have against A/R Funding, and until Client does so, A/R Funding may hold any balance remaining to Client's credit in the Clients credit account as security for all obligations of Client to A/R Funding. Client shall pay A/R Funding upon demand all costs and expenses, including  attorney fees, incurred by A/R Funding to obtain or enforce payment of any obligations due from Client to A/R Funding or in the prosecution or successful defense of any action, including any existing and/or future preference claim in any bankruptcy court, or proceeding concerning any matter growing out of or related to this agreement, the factoring of Client's accounts receivable by A/R Funding, or any obligations owing by Client to A/R Funding.

Termination of this Agreement shall not terminate, extinguish, or remove any liens or security interests granted to A/R Funding hereunder until Client has fully paid and discharged any and all of its obligations to A/R Funding.

## SECTION 16.

## CONTROLLING STATE LAW

Inasmuch as the transactions hereunder will take place at A/R Funding's office in the City of Greenville, State of South Carolina, this agreement and all transactions, assignments, and transfers hereunder, and all rights of the parties shall be governed as to validity, construction, enforcement, and in all other respects by the laws of the State of South Carolina.

## SECTION 17.

## MISCELLANEOUS

Neither party shall be bound by anything not expressed herein nor shall this agreement be modified orally. The captions in this agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

Client shall be liable for, and A/R Funding may charge Client's account with all costs and expenses of collecting any returned checks, all costs and expenses of filing financing statements including any refiling or recording taxes, the costs of Client credit updates, the making of lien searches, and any attorney fees and expenses that may be incurred by A/R Funding in perfecting, protecting, preserving or enforcing its security interests and rights hereunder.

Client acknowledges that A/R Funding may obtain financing from a financial institution and in connection therewith: (a) consents to A/R Funding's granting a security interest in all of its rights under this Agreement to the financial institution, the documents executed in connection therewith and all collateral thereunder, and (b) agrees that the financial Institution shall be a beneficiary of all its representations, warranties and covenants in this Agreement and may exercise any power of attorney given by Client to A/R Funding under this Agreement or otherwise.

## SECTION 18.

## DISPUTE RESOLUTION

Parties agree that any claim or controversy of whatever nature among them, including but not limited to the issue of arbitrability of a dispute, arising out of or relating to this Agreement or the breach of it, shall be resolved by the dispute resolution procedures set forth below.  Further, it is the intent of the parties to first attempt to resolve any dispute(s) informally and promptly through good faith discussions between employees of the parties or their agents. If the controversy is not resolved by discussions among the parties, the parties agree to then attempt in good faith to

settle their dispute(s) by mediation under the Commercial Mediation Procedures of the American Arbitration Association ("AAA"), before resorting to arbitration, litigation, or some other dispute resolution procedure. Should any disputes remain or exist between the parties after completion of the dispute resolution process set forth above, then the parties shall promptly submit any dispute, claim or controversy arising out of or relating to this Agreement or any dispute contemplated by this Agreement including any action in tort, contract, or otherwise, at equity or at law, or any alleged breach, including, but not limited to, any matter with respect to the meaning, effect, validity, termination, interpretation, performance or enforcement of this Agreement to binding arbitration administered by AAA in accordance with the AAA Commercial Arbitration Rules which are incorporated herein by reference.

Additionally, Parties agree that the matters which are the subject of this Agreement and any issues arising among the parties in relation to this Agreement involve, touch and concern interstate commerce as contemplated by the Federal Arbitration Act 9 U.S.C.A. § 1 *et seq.* (1999). Should A R Funding, in its sole discretion, be required to employ an attorney to represent it in any phase of dispute resolution, AR Funding shall be entitled to recover its reasonable attorneys' fees, costs, charges and expenses, including costs of expert witnesses. Parties agree that any mediation or arbitration shall be exclusively conducted in Greenville, South Carolina and that South Carolina law shall apply to the dispute[s] resolved hereunder. Notwithstanding the foregoing, judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

## SECTION 19.
## FEDERAL TAX LIENS

The Client shall be responsible for the timely payment of all tax withholdings and all other payroll tax payments for the employees and shall be responsible for the timely filing of all employment tax returns, including without limitation, all Federal and State employee withholding returns and payroll tax returns and failure to do so will constitute a breach of this agreement.

## SECTION 20.
## SUCCESSORS AND ASSIGNS

This agreement shall be binding upon the parties hereto and their successors and assigns.

## SECTION 21.
## ACCEPTANCE

This agreement shall not become effective until accepted by A/R Funding at its office in the City of Greenville, State of South Carolina.

In witness whereof, the parties have executed this agreement at Greenville, South Carolina, the day and year first above mentioned.

Assignor:
**Color Spectrum Network, Inc.**

BY: _____
Gilbert A. Bonilla, President/CEO

Accepted by:
**Associated Receivables Funding, Inc.**

_____
Brian K. Holden, Chairman and CEO

DATE: _____

Bank Signature Guarantee Stamp

_____
(Signature Required)

Page 1 of 3

Applicants Initial Here

| STATE OF SOUTH CAROLINA | ) | |
|---|---|---|
| | ) | **GUARANTY AGREEMENT** |
| **COUNTY OF GREENVILLE** | ) | |

THIS GUARANTY AGREEMENT, made this 29 day of July _____, 2011, by Gilbert A. Bonilla of the County of Los Angeles, State of California, hereinafter referred to as "guarantor(s)" to Associated Receivables Funding, Inc, of the City and County of Greenville, State of South Carolina, herein referred to as "obligee".

## RECITALS

1. Obligee is prepared to execute an agreement with Color Spectrum Network, Inc., of the County of Los Angeles, State of California, hereinafter referred to as "obligor", for the purpose of factoring all or a portion of the accounts receivable of the obligor. A copy of the proposed agreement is attached hereto as Exhibit A.

2. Obligee will execute said agreement, Exhibit A, only if performance thereof will be guaranteed by responsible third parties.

3. The guarantor(s) each have an interest in the obligor and desire that the obligee enter into said agreement, Exhibit A, and are willing to guarantee performance of said agreement under the terms set forth below.

NOW, THEREFORE, in consideration of Three ($3.00) Dollars, in hand paid to each of the guarantors by the obligee, the receipt of which is hereby acknowledged, the guarantor(s) hereby agree(s) as follows:

## SECTION ONE

## STATEMENT OF GUARANTY

Guarantors guarantee prompt and satisfactory performance of the attached agreement, Exhibit A, in accordance with all its terms and conditions. If obligor defaults in performance of its obligations under said agreement according to its terms and conditions, guarantor shall pay to obligee all damages, costs, and expenses that obligee is entitled to recover from obligor by reason of such default, including obligee's attorney fees and costs. This is a guaranty of payment and not of collection. Guarantor(s) specifically authorize direct action on this guaranty agreement without exhaustion of any other remedies A/R Funding may have, and waive any requirement of prior action against obligor.

## SECTION TWO

## DURATION

This guaranty shall continue in force until all obligations of obligors under the attached agreement, Exhibit A, have been satisfied or until obligors' liability to obligee under said agreement has been completely discharged, whichever first occurs. Guarantors shall not be discharged from liability hereunder as long as any claim by obligee against obligor remains outstanding.

## SECTION THREE

## LIMITATION OF LIABILITY

The total amount recoverable by obligee under this guaranty agreement is unlimited.

## SECTION FOUR

## JOINT AND SEVERAL LIABILITY

Guarantors shall be jointly and severally liable for all obligations under this guaranty. This guaranty may be enforced against a guarantor separately or against both or all guarantors jointly.

## SECTION FIVE
## MODIFICATION OF GUARANTY AGREEMENT

Written consent of guarantors shall be required prior to any modification of the attached agreement, Exhibit A, that would increase the obligations of guarantors in any way or that would render prompt and satisfactory performance by obligor more difficult. An extension of time for performance by obligor shall not be construed as a modification that would increase the obligations of guarantors for purposes of this provision.

## SECTION SIX
## NOTICES

Notice of acceptance is waived. Notice of default on the part of obligor is waived. Obligee shall furnish guarantors with 30 day progress reports with respect to performance of the attached agreement, Exhibit A, each of which reports shall include a discussion of any unforeseen delays or other problems experienced during the reporting period. Failure of the obligee to deliver said reports shall not constitute a default under this agreement and shall not release the undersigned guarantor(s) of any obligations contained herein.

## SECTION SEVEN
## JURISDICTION

This guaranty is made in the State of South Carolina and shall be governed by, construed and interpreted in accordance with South Carolina law. Guarantor(s) waive trial by jury and the right to trial by jury in all actions and proceedings between A/R Funding and Guarantor(s) and agree that all legal actions or proceedings between A/R Funding and Guarantor(s) may be brought in any court of competent jurisdiction in the State of South Carolina. Guarantor(s) hereby waive objections to summons, service of process, personal jurisdiction over the person or venue of any such court.

## SECTION EIGHT
## BINDING EFFECT OF AGREEMENT

This guaranty shall be binding on guarantors and on their legal representatives. No modification, waiver or discharge of the liability of any Guarantor shall be valid unless in writing, signed and subscribed by A/R Funding. This guaranty shall bind each Guarantor and inure to the benefit of A/R Funding, and their respective heirs, personal representatives, executors, administrators, successors and assigns.

## SECTION NINE
## DISPUTE RESOLUTION

Parties agree that any claim or controversy of whatever nature among them, including but not limited to the issue of arbitrability of a dispute, arising out of or relating to this Agreement or the breach of it, shall be resolved by the dispute resolution procedures set forth below. Further, it is the intent of the parties to first attempt to resolve any dispute[s] informally and promptly through good faith discussions between employees of the parties or their agents. If the controversy is not resolved by discussions among the parties, the parties agree to then attempt in good faith to settle their dispute[s] by mediation under the Commercial Mediation Procedures of the American Arbitration Association ("AAA"), before resorting to arbitration, litigation, or some other dispute resolution procedure.

Should any disputes remain or exist between the parties after completion of the dispute resolution process set forth above, then the parties shall promptly submit any dispute, claim or controversy arising out of or relating to this Agreement or any dispute contemplated by this Agreement including any action in tort, contract, or otherwise, at equity or at law, or any alleged breach, including, but not limited to, any matter with respect to the meaning, effect, validity, termination, interpretation, performance or enforcement of this Agreement to binding arbitration administered by AAA in accordance with the AAA Commercial Arbitration Rules which are incorporated herein by reference.

Additionally, Parties agree that the matters which are the subject of this Agreement and any issues arising among the

parties in relation to this Agreement involve, touch and concern interstate commerce as contemplated by the Federal Arbitration Act 9 U.S.C.A. § 1 *et seq.* (1999). Should A R Funding, in its sole discretion, be required to employ an attorney to represent it in any phase of dispute resolution, AR Funding shall be entitled to recover its reasonable attorneys' fees, costs, charges and expenses, including costs of expert witnesses. Parties agree that any mediation or arbitration shall be exclusively conducted in Greenville, South Carolina and that South Carolina law shall apply to the dispute[s] resolved hereunder. Notwithstanding the foregoing, judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction.

IN WITNESS WHEREOF, guarantors have executed this guaranty at Greenville, South Carolina, on the day and year first above written.

**Gilbert A. Bonilla**
*1204 Hidden Springs Ln.*
Address
*Glendora, CA 91741*
City, State, Zip
*909-985-4550 X201*
Telephone

SSN: *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*

Address

City, State, Zip

Telephone

SSN:_____

Bank Signature Guarantee Stamp

_____
(Signature Required)

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**
Brian Holden
864-250-2107

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**
Brian K Holden
PO Box 16253
Greenville, SC 29606
USA

DOCUMENT NUMBER: 23399670002
FILING NUMBER: 09-7217692508
FILING DATE: 12/22/2009 13:52
IMAGE GENERATED ELECTRONICALLY FOR WEB FILING
THE ABOVE SPACE IS FOR CA FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names**

| | | | | | |
|---|---|---|---|---|---|
| OR | **1a. ORGANIZATION'S NAME** COLOR SPECTRUM NETWORK INC | | | | |
| | **1b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | **SUFFIX** |

| **1c. MAILING ADDRESS** 180 NORTH GLENDORA AVE SUITE 203 | **CITY** GLENDORA | | **STATE** CA | **POSTAL CODE** 91741 | **COUNTRY** USA |
|---|---|---|---|---|---|

| **1d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **1e. TYPE OF ORGANIZATION** CORPORATION | **1f. JURISDICTION OF ORGANIZATION** CA | **1g. ORGANIZATIONAL ID#, if any** ☑ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names**

| | | | | | |
|---|---|---|---|---|---|
| OR | **2a. ORGANIZATION'S NAME** | | | | |
| | **2b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | **SUFFIX** |

| **2c. MAILING ADDRESS** | **CITY** | | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|---|

| **2d. SEE INSTRUCTIONS** | **ADD'L DEBTOR INFO** | **2e. TYPE OF ORGANIZATION** | **2f. JURISDICTION OF ORGANIZATION** | **2g. ORGANIZATIONAL ID#, if any** ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)**

| | | | | | |
|---|---|---|---|---|---|
| OR | **3a. ORGANIZATION'S NAME** ASSOCIATED RECEIVABLES FUNDING INC | | | | |
| | **3b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | | **MIDDLE NAME** | **SUFFIX** |

| **3c. MAILING ADDRESS** PO BOX 16253 | **CITY** GREENVILLE | **STATE** SC | **POSTAL CODE** 29606 | **COUNTRY** USA |
|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**

All Accounts Receivable, now existing or hereafter arising, all contract rights of Debtor, now owned or hereafter acquired arising from goods or services, the sale of which may give rise to any Accounts, all chattel paper, documents, and instruments relating to accounts including moneys on deposits, reserves, holdbacks, credits, and the proceeds, products, and accessions of and to any and all of the foregoing.

**5. ALT DESIGNATION:** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING

| ☐ **6. This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS** Attach Addendum [if applicable] | **7. Check to REQUEST SEARCH REPORT(S) on Debtor(s)** [ADDITIONAL FEE]    [optional] ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 |
|---|---|

**8. OPTIONAL FILER REFERENCE DATA**

FILING OFFICE COPY

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| Andrew Goodman (SBN 115685)<br>GOODMAN FAITH, LLP<br>21550 Oxnard Street<br>Suite 830<br>Woodland Hills, CA. 91367<br>Telephone: (818) 887-2500<br>Telecopier: (818) 887-2501<br>agoodman@goodmanfaith.com<br><br>*Attorney for* Debtor, Color Spectrum Network | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| In re:<br><br>COLOR SPECTRUM NETWORK<br><br>Debtor. | CHAPTER 11<br><br>CASE NUMBER 2:11-42383<br><br>DATE:<br>TIME:<br>COURTROOM: 1568 |
|---|---|

## STATEMENT PURSUANT TO LOCAL BANKRUPTCY RULE 4001-2
### (CASH COLLATERAL STIPULATIONS)
### (Secured Creditor: AR FUNDING )

The Debtor, through a separately filed motion, has requested the approval of a stipulation providing for the use of cash collateral, or post-petition financing, or both. Attached to the motion as Exhibit "B" is a true and correct copy of the agreement for use of cash collateral or post-petition financing (the "Agreement"), which Agreement contains the following provisions:

| Description of Provision | Page No: | Line No. (If Applicable) |
|---|---|---|
| ☐ Cross-collateralization clauses | | |
| ☑ Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's lien or debt | | |
| ☑ Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's lien and liens held by persons who are not party to the stipulation, or which create a lien senior or equal to any existing lien | | |
| ☑ Waivers of 11 U.S.C. § 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | 35 | 20 - 25 |
| ☐ Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provision of law | | |
| ☐ Releases of liability for the creditor's alleged prepetition torts or breaches of contract | | |
| ☐ Waivers of avoidance actions arising under the Bankruptcy Code | | |

(Continued on next page)

This form is optional. It has been approved for use by the U.S. Bankruptcy Court for the Central District of California.

*January 2009*

**F 4001-2**

EXHIBIT C                    Page 26

Statement Pursuant to Local Bankruptcy Rule 4001-2 (Cash Collateral Stipulations) - *Page 2 of* ____    **F 4001-2**

| In re    (SHORT TITLE) | CHAPTER:  11 |
|---|---|
| COLOR SPECTRUM NETWORK                                      Debtor(s). | CASE NO.:  2:11-42383 |

| | Description of Provision | Page No: | Line No. (If Applicable) |
|---|---|---|---|
| ☐ | Automatic relief from the automatic stay upon default, conversion to chapter 7, or appointment of a trustee | | |
| ☐ | Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens | | |
| ☐ | Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. §§ 506(c), 544, 545, 547, 548 and 549 | | |
| ☐ | Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. § 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent | | |
| ☐ | Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order | | |
| ☐ | Provisions providing for the paying down of prepetition principal owed to a creditor | | |
| ☐ | Findings of fact on matters extraneous to the approval process | | |

Dated:  7/29/11

Andrew Goodman
_____
*Type Name*

_____
*Signature*

This form is optional.  It has been approved for use by the U.S. Bankruptcy Court for the Central District of California.

*January 2009*

**F 4001-2**

EXHIBIT C                                                        Page 27

1    ANDREW GOODMAN (State Bar No. 115685)
GOODMAN FAITH, LLP
2    21550 Oxnard Street, Suite 830
Woodland Hills, California 91367
3    Telephone: (818) 887-2500
Facsimile: (818) 887-2501
4

5    Attorneys for Debtor and Debtor-in-Possession
Color Spectrum Network, Inc.

6

7

8                **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
9                    **LOS ANGELES DIVISION**

10

11    In re                       Case No.: 2:11-bk-42383-ER
COLOR SPECTRUM NETWORK, INC.,
12                           Chapter: 11
                   Debtor.
13

14                             **INTERIM ORDER UNDER 11 U.S.C. §§ 105(A), 361, 363, AND 364 AND BANKRUPTCY RULES 2002, 4001, 6003, AND 9014: (A) AUTHORIZING DEBTOR TO FACTOR, AND INCUR POST PETITION SECURED INDEBTEDNESS; (B) GRANTING SECURITY INTERESTS AND SUPER-PRIORITY CLAIMS; (C) APPROVING USE OF CASH COLLATERAL; AND (D) SCHEDULING FINAL HEARING**
15

16

17

18

19

20                             Date:      To Be Set
Time:      To Be Set
21                             Place:     Courtroom 1568
                            [address]
22

23        Color Spectrum Network, Inc. (the "Debtor"), as debtor and debtor-in-possession in the

24    above-captioned chapter 11 case (the "Chapter 11 Case"), moved on July 29, 2011 (the "Motion")

25    for interim and final orders seeking:

26        a)       authorization for the Debtor to factor its invoices to Associated Receivables

27    Funding (the "Factor") at the rates set forth in the Factoring Agreement with full recourse, and

28    upon such other terms and conditions set forth in this interim order (the "Interim Order");

b)       authorization for the Debtor to execute and deliver to the Factor the Factoring

Agreement attached as Exhibit 2 to the Motion (the "Factoring Agreement"), and to perform such

other and further acts as may be necessary or appropriate in connection with the Factoring

Agreement;

c)       authorization for the Debtor to grant liens on and security interests in (1) all

Accounts, wherever located or situated, and whether now existing or arising in the future, and

whether now owned or at any time in the future acquired by Assignor, together with all proceeds

and monies due or becoming due on such Accounts; all guaranties, insurance and security for

such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts,

and the rights associated with or related or pertaining to such goods, including without limitation

the right of stoppage in transit and any and all related insurance, any items substituted therefore as

replacements and all additions thereto; (2) all of Assignor's chattel paper, instruments, general

intangibles, securities, contract rights and insurance associated with or related to the Accounts;

and (3) all proceeds of any of the foregoing Accounts, property, rights and interests as provided in

the Factoring Agreement to secure the Debtor's pre-petition obligations, and post petition

obligations to the Factor, and to grant the Factor super-priority administrative expense claims;

d)       authorization for the Debtor to: (1) use cash collateral, if the funds in or coming

into the Debtor's possession constitute cash collateral within the meaning of 11 U.S.C. § 363(a);

and (2) provide adequate protection to the Factor;

e)       to schedule, pursuant to Bankruptcy Rules 4001 and 6003, an interim hearing (the

"Interim Hearing") on the Motion, to be held to consider entry of this Order authorizing the

Debtor to factor pursuant to the terms of this Order and the Factoring Agreement; authorization

for the Debtors to grant the Factor as adequate protection: (1) replacement liens on and security

interests in all of the Debtor's assets; and (2) allowed super-priority administrative expense

claims, in both instances, as provided herein;

f)       to schedule, pursuant to Bankruptcy Rules 4001, a final hearing (the "Final

Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing, on a

final basis, the factoring and all relief requested in the Motion.

1    Upon the record presented at the Interim Hearing and after due deliberation, for good and

2    sufficient cause, it is hereby

3    **FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED,** that**:**

4    1.    Disposition.  The Motion is granted on an interim basis on the terms set forth in

5    this Order.  Any objections to the interim relief sought in the Motion that have not previously

6    been resolved or withdrawn, including any reservations of rights therein, are hereby overruled on

7    their merits.  This Order shall be valid, binding on all parties-in-interest, and fully effective

8    immediately upon entry.

9    2.    Jurisdiction; Venue.  The Court has jurisdiction over the Chapter 11 Case, the

10   parties, and the Debtor's property pursuant to 28 U.S.C. § 1334.  This is a core proceeding

11   pursuant to 28 U.S.C. §157(b).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

12   3.    Notice.  Notice of the Motion, the relief requested and the Interim Hearing was

13   served by the Debtor on (a) all creditors who the Debtor believes have or may assert an interest in

14   the Debtor's assets, including cash collateral; (b) all applicable taxing authorities; (c) the

15   committee appointed under 11 U.S.C. § 1102, or its authorized agent, or, if no committee of

16   unsecured creditors has been appointed, the creditors included on the list filed under Bankruptcy

17   Rule 1007(d); (d) the United States Trustee; (e) the twenty largest unsecured creditors, (f) those

18   who have filed an entry of appearance and request for notices in this case, and (g) the Factor.

19   Under the circumstances, the notice given by the Debtor of the Motion, the relief requested and

20   the Interim Hearing constitutes due and sufficient notice, and no further notice of the relief sought

21   at the Interim Hearing and the relief granted by this Order is necessary or required.

22   4.    Purpose and Necessity of Factoring and Use of Cash Collateral.  The Debtor must

23   factor its invoices as described in the Motion, and must use what may be cash collateral, to timely

24   pay: (a) the ordinary course expenses involved in operating the Debtor's business post-petition;

25   (b) the other obligations the Debtor has sought authorization in its "first day" motions to pay; and

26   (c) the other administrative expenses of this case.  The Debtor is unable to obtain adequate

27   unsecured credit allowable under 11 U.S.C. § 503 as an administrative expense or other financing

28   under 11 U.S.C. § 364(c) or (d) on equal or more favorable terms than those set forth in the

Factoring Agreement within the time-frame required to avoid immediate and irreparable harm to the Debtor and its bankruptcy estate.  The Debtor is unable to obtain financing on a post-petition basis without the Debtor granting the Super-Priority Claims as defined below and the Factor Liens as defined below.

5.    Good Cause.  The Debtor's ability to obtain sufficient working capital and liquidity under the Factoring Agreement and through use of cash collateral is vital to the Debtor's estate and its creditors, so that the Debtor can continue to operate its business in the ordinary course, serve its customers, and preserve the jobs of its employees.  The Debtor's estate, creditors, customers, and employees will be immediately and irreparably harmed if this Order is not entered.  Consummation of the Factoring Agreement and authorization to use cash collateral in accordance with this Order and the Factoring Agreement is in the best interests of the Debtor's estate, creditors, customers, and employees. Good cause has been shown for the interim relief sought in the Motion.

6.    Good Faith; Fair Consideration and Reasonably Equivalent Value.  The terms of the Factoring Agreement, including the rates and fees applicable thereto and intangible factors, are at least as favorable to the Debtor than those available from alternative sources.  Based upon the record before the Court, the Factoring Agreement and the terms of the Debtor's use of cash collateral have been negotiated in good faith and at arm's-length between the Debtor and the Factor.  Any factoring or other financial accommodations made to the Debtor by the Factor pursuant to this Order and the Factoring Agreement shall be deemed to have been extended by the Factor in good faith, as that term is used in 11 U.S.C. § 364(e), and the Factor shall be entitled to all protections afforded thereby.  The terms of the factoring under the Factoring Agreement are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and is supported by reasonably equivalent value and fair consideration.

7.    Immediate Entry of Order.  The Debtor has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and 6003.  The permission granted herein to enter into the Factoring Agreement and obtain funds thereunder and to use cash collateral is necessary to avoid immediate and irreparable harm to the Debtor and its bankruptcy

1  estate. This Court concludes that entry of this Order is in the best interests of the Debtor's estate

2  and creditors as it will, among other things, provide the liquidity necessary for the continued flow

3  of goods and services to the Debtor that are necessary to maintain the operation of the Debtor's

4  business and further enhance the Debtor's prospects for a successful restructuring.

5          8.     <u>Authorization to Use Cash Collateral</u>. The Debtor is authorized to use cash

6  collateral in the ordinary course of its business throughout the Chapter 11 Case until otherwise

7  ordered by the Court.

8          9.     <u>Interim Factoring</u>. Subject to the terms and conditions of this Order and the

9  Factoring Agreement, the Debtor is authorized to factor its invoices pending entry of the Final

10  Order.

11         10.     <u>Super-Priority Claim and Factor Liens</u>.

12        Except as provided in this Order with respect to the Carve-Out Expenses (as defined below), the

13  Factor is hereby granted, and all of the obligations of the Debtor under the Factoring Agreement, and the

14  diminution, if any, in the value of the Factor's interest in cash collateral by virtue of the Debtor's use of

15  cash collateral (collectively, the "Factoring Obligations"), which shall and hereby do constitute, an

16  allowed super-priority administrative expense claim against the Debtor (the "Super-Priority Claims")

17  pursuant to 11 U.S.C. § 364(c)(1), having priority over any and all administrative expense claims,

18  adequate protection claims and all other claims against the Debtor, now existing or hereafter arising, of

19  any kind whatsoever, including without limitation, all claims arising under 11 U.S.C. §§ 105, 326, 328,

20  330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 and any other provision of the

21  Bankruptcy Code or otherwise. The Superpriority Claims shall be payable from and have recourse to all

22  pre-petition and post-petition property of the Debtor and all proceeds thereof, including, without

23  limitation, all proceeds or other amounts received in respect of the Debtor's claims and causes of action

24  arising under state or federal law under sections 11 U.S.C. §§ 541, 542, 544, 545, 547, 548, 549, 550, 551,

25  552 and 553 (collectively, the "Avoidance Actions"), provided, however, the Factoring Obligations shall

26  only be payable from the Avoidance Actions only if so approved in the Final Order. The Super-Priority

27  Claims granted pursuant to this paragraph shall be subject and subordinate in priority of payment only to

28  payment of the Carve-Out Expenses.

1        As security for the Factoring Obligations, the Factor is hereby granted liens under 11

2    U.S.C. §§ 361(2), 363, and 364(d) on all of the Collateral, as defined below, subject and

3    subordinate in priority only to: (i) valid, perfected and unavoidable pre-petition liens; and

4    (ii) payment of the Carve-Out Expenses (the "Factor Liens").  "Collateral" shall mean (1) all

5    Accounts, wherever located or situated, and whether now existing or arising in the future, and

6    whether now owned or at any time in the future acquired by Assignor, together with all proceeds

7    and monies due or becoming due on such Accounts; all guaranties, insurance and security for

8    such Accounts; all of Assignor's rights and interests in the goods giving rise to such Accounts,

9    and the rights associated with or related or pertaining to such goods, including without limitation

10    the right of stoppage in transit and any and all related insurance, any items substituted therefore as

11    replacements and all additions thereto; (2) all of Assignor's chattel paper, instruments, general

12    intangibles, securities, contract rights and insurance associated with or related to the Accounts;

13    and (3) all proceeds of any of the foregoing Accounts, property, rights and interests, as set forth in

14    the Agreement, (excluding the Avoidance Actions for purposes of this Order, but subject to the

15    right of the Factor to obtain inclusion of Avoidance Actions upon entry of the Final Order), all

16    cash and non-cash proceeds, rents, products and profits of any of the foregoing.

17        The Factor Liens shall be effective automatically and immediately upon the entry of this

18    Order, and, other than as set forth in this Order, no lien or security interest granted to the Factor

19    under this Order shall be subordinated to or made pari passu with any other lien or security

20    interest created and/or perfected pursuant to 11 U.S.C. § 364(c) or (d) or otherwise.  The Factor

21    Liens arising hereunder shall be and hereby are fully perfected security interests, such that no

22    additional steps need be taken by the Factor to perfect such interests.  Any provision of any lease

23    or other license, contract or other agreement that requires: (i) the consent or approval of one or

24    more landlords or other parties; or (ii) the payment of any fees or obligations to any governmental

25    entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such

26    leasehold interest or the proceeds thereof or other Collateral related thereto shall have no force

27    and effect with respect to the transactions granting the Factor a security interest in such leasehold

28    ///

interest, license, contract or agreement, or the proceeds of any assignment and/or sale thereof by the Debtor.

The Factor Liens and Super-Priority Claims and other rights and remedies granted to the Factor under this Order shall continue in the Chapter 11 Case and in any superseding case or cases for the Debtor under any chapter of the Bankruptcy Code, and such liens, security interests and claims shall maintain their priority as provided in this Order, until all the Factoring Obligations have been paid in full in cash.

11.    Acknowledgement.  The Debtor acknowledges, represents, stipulates and agrees that the Debtor has obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be made or given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, performance, validity and enforceability of the Factoring Agreement;

12.    Fees and Expenses.  All fees, costs, charges and expenses required to be paid by the Debtor to the Factor under the Factoring Agreement are hereby approved.  The Debtor shall, within ten (10) days following receipt of a written summary invoice pay the Factor for its reasonable out-of-pocket fees (including professional fees), costs, charges and expenses, arising after the petition date that are payable or reimbursable under the Factoring Agreement.  None of the Factor's costs, fees, charges, or expenses shall be required to be maintained in accordance with the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with the Court.

13.    Recording and Filing Fees.  All fees and costs and/or expenses payable by the Debtor in connection with the filing of financing statements to confirm the perfection of the liens and security interests granted or authorized by this Order are hereby approved and shall be promptly paid in full by the Debtor without the necessity of the Debtor or the Factor filing any further application with the Court for approval or payment of such fees, costs and/or expenses.

14.    Authority to Execute and Deliver Necessary Documents.  The Debtor is hereby authorized and empowered to enter into and deliver the Factoring Agreement in substantially the

1  form annexed to the Motion and UCC financing statements as necessary or appropriate and

2  securing all of the Debtor's obligations under the Factoring Agreement.  The Debtor is hereby

3  further' authorized, empowered and directed: (a) to perform all of its obligations under the

4  Factoring Agreement; and (b) to perform all of its obligations under this Order, including, without

5  limitation, the payment of all principal, interest, charges, fees, and the reimbursement of present

6  and future reasonable costs and expenses (including without limitation, reasonable attorneys' fees

7  and legal expenses) paid or incurred by the Factor as provided for in this Order of the Factoring

8  Agreement, all of which shall be included and constitute part of the principal amount of the

9  Factoring Obligations, be deemed Super-Priority Claims having the same priority as all other

10  Factoring Obligations hereunder and be secured by valid and perfected FactorLiens; and (c) to do

11  and perform all other acts, to make, execute and deliver all other instruments, agreements and

12  documents, which may be required or necessary for the Debtor to perform all of its obligations

13  under this Order and the Factoring Agreement, without further order of the Court and pending the

14  Final Hearing.  The Factoring Obligations shall constitute valid and binding obligations of the

15  Debtor enforceable against it, and its successors and assigns, in accordance with their terms and

16  the terms of this Order.

17  15.  Carve-Out.  The Factor Liens and the Super-Priority Claims shall be subject to pay

18  United States Trustee fees and professional fees allowed and payable under 11 U.S.C. §§ 330,

19  331 and 503 (collectively, the "Carve-Out Expenses").

20  16.  Limitation On Additional Surcharges.  Subject to entry of the Final Order, except

21  to the extent of the Carve-Out Expenses, no costs or expenses of administration or other

22  surcharge, lien, assessment or claim incurred on or after the petition date of any person or entity

23  shall be imposed against any of the Collateral or the Factor, nor shall the Collateral or the Factor

24  be subject to surcharge by any party-in-interest for any amounts arising or accruing after the

25  petition date pursuant to 11 U.S.C. §§ 506(c), 552(b) or 105(a) or similar principle of law.

26  17.  Access to Information.  The Debtor shall permit representatives, agents and/or

27  employees of the Factor to have reasonable access to the Debtor's premises and its records during

28  normal business hours (without unreasonable interference with the proper operation of the

Debtor's business) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

18.    Successors and Assigns.  The Factoring Agreement and the provisions of this Order shall be binding upon the Factor, the Debtor, and their respective successors and assigns, and shall inure to the benefit of the Factor, the Debtor, and their respective successors and assigns including, without limitation, any trustee, responsible officer, examiner with expanded powers, estate administrator or representative, or similar person appointed in a case for the Debtor under any chapter of the Bankruptcy Code.

19.    No Third Party Beneficiary.  Except with respect to any of the Finance Parties, their delegates, successors and assigns, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

20.    Binding Nature of Agreement.  Each of the DIP Loan Documents to which the Debtor is and will become a party shall constitute legal, valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with their terms.  The Factoring Agreement has been or will be properly executed and delivered to the Factor by the Debtor.  The rights, remedies, powers, privileges, liens and priorities of the Factor provided for in this Order and in the Factoring Agreement shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation order) or by any plan of reorganization or liquidation in the case or in any subsequent case under the Bankruptcy Code, unless and until the Factoring Obligations have first been paid in full in cash.

21.    Subsequent Reversal or Modification.  This Order is entered pursuant to § 364 of the Bankruptcy Code, granting the Factor all protections afforded by 11 U.S.C. § 364(e).  If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, that action will not affect: (a) the validity of any obligation, indebtedness or liability incurred hereunder by the Debtor to the Factor prior to the date of receipt by the Factor of written notice of the effective date of such action; or (b) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the Factoring Agreement.  Notwithstanding any such reversal, stay, modification or vacatur, any post-petition indebtedness, obligation or liability

1    incurred by the Debtor to the Factor prior to written notice to each of them of the effective date of

2    such action shall be governed in all respects by the original provisions of this Order, and each of

3    them shall be entitled to all the rights, remedies, privileges and benefits granted herein and in the

4    DIP Loan Documents with respect to all such indebtedness, obligation or liability.

5        22.    No Waivers.

6            a.    This Order shall not be construed in any way as a waiver or relinquishment

7    of any rights that the Factor may have to bring or be heard on any matter brought before this

8    Court.

9            b.    The rights and obligations of the Debtor and the rights, claims, liens,

10   security interests and priorities of the Factor arising under this Order are in addition to, and are

11   not intended as a waiver or substitution for, the rights, obligations, claims, liens, security interests

12   and priorities granted by the Debtor to the Factor pre-petition.

13           Without limiting the generality of the foregoing subparagraphs, the Factor may

14   petition this Court for any such additional protection it may reasonably require.

15       23.    Conversion/Dismissal.  If an order is entered: (a) dismissing this case under 11

16   U.S.C.§§ 305 or 1112 of the Bankruptcy Code or otherwise, (b) converting the Chapter 11 Case

17   under 11 U.S.C. § 1112; or (c) appointing a chapter 11 trustee, an examiner with expanded

18   powers, or any other responsible person of office, such order shall provide that the liens, security

19   interests and Super-Priority Claims granted to the Factor in this Order shall continue in full force

20   and effect, shall remain binding on all parties-in-interest and shall maintain their priorities as

21   provided in this Order until all Factoring Obligations shall have been paid in full in cash, and that

22   this Court shall retain jurisdiction to the fullest extent permitted by law, notwithstanding such

23   dismissal, for purposes of enforcing the liens, security interests and Super-Priority Claims of the

24   Factor.

25       24.    Survival.  The liens, lien priority, administrative priorities and other rights and

26   remedies with respect to the Debtor granted to the Factor pursuant to the Factoring Agreement

27   and this Order (specifically including, but not limited to, the existence, perfection and priority of

28   the liens and security interests and the administrative priority provided) shall not be modified,

1    altered or impaired in any manner by any other financing or extension of credit or incurrence of

2    indebtedness by the Debtor (pursuant to 11 U.S.C. § 364 or otherwise), by any dismissal or

3    conversion of the Chapter 11 Case, or by the confirmation of a plan of reorganization that does

4    not: (a) contain a provision for termination of the total commitment and payment in full in cash of

5    the Factoring Obligations on or before the effective date of such plan upon entry thereof unless

6    otherwise agreed by the Factor; and (b) provide for the continuation of the liens and security

7    interests granted to the Factor, unless otherwise agreed by the Factor, and the priorities thereof

8    until the earlier of: (i) such plan effective date, and (ii) the date the Factoring Obligations are paid

9    in full in cash and the total commitment is terminated.

10        25.    Adequate Notice.  The notice given by the Debtor of the Interim Hearing was

11    given in accordance with Bankruptcy Rules 2002 and 4001(c)(2) and the local rules of this Court.

12    Under the circumstances, no other or further notice of the request for the relief granted at the

13    Interim Hearing is required.  The Debtor shall promptly mail copies of this Order and notice of

14    the Final Hearing to all parties entitled to notice.  Any objection to the relief sought at the Final

15    Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed

16    with the Court and served so as to be actually received no later than five days prior to the Final

17    Hearing by the following: (a) counsel to the Debtor, Goodman Faith, LLP 21550 Oxnard Street,

18    Suite 830, Woodland Hills, CA  91367 (Attn: Andrew Goodman); and (b) counsel to the Factor,

19    Bryan Cave, LLP (Attn: Edward M. Zachary), Two North Central Avenue, #2200, Phoeniz, AZ

20    85004, with an additional copy to (c) Bryan Cave LLP (Attn: Aaron M. McKown), 3161

21    Michelson Drive, Suite 1500, Irvine, CA  92612.  The Court shall conduct a Final Hearing on the

22    Motion commencing on the _____ day of _____, 2011 at _____ __.m.

23        26.    Retention of Jurisdiction.  This Court shall retain jurisdiction over all matter

24    pertaining to the implementation, interpretation and enforcement of this Order.

25        27.    Binding Effect of Order.  The terms of this Order shall be binding on any trustee

26    appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

27        28.    Entry of Order; Effect.  This Order shall take effect immediately upon execution,

28    notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise,

1 | and the Clerk of the Court is hereby directed to enter this Order on the Court's docket in the

2 | Chapter 11 case.

3 |       29.    Pursuant to Rule 7052, F.R.Bankr.P., all findings of fact herein shall be construed

4 | as conclusions of law, and conclusions of law set forth herein shall be construed as findings of

5 | fact.

6 |       IT IS SO ORDERED.

7 |

8 | PRESENTED BY:
GOODMAN FAITH, LLP

9 |

10 | By:_____/s/ANDREW GOODMAN___
       ANDREW A. GOODMAN

11 |     Attorneys for Debtor and Debtor-
       In-Possession

12 |     Color Spectrum Network, Inc.

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

| In re:  COLOR SPECTRUM NETWORK, INC. | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER   2:11-bk-42383-BR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 21550 Oxnard Street, Suite 830, Woodland Hills, CA  91367

A true and correct copy of the foregoing document described as **EMERGENCY MOTION OF DEBTOR FOR ENTRY OF INTERIM AND FINAL DIP ORDERS (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING; AUTHORIZING USE OF CASH COLLATERAL; (B) USING OF CASH COLLATERAL; AND (C) GRANTING OTHER RELIEF UNDER 11 U.S.C. SECTIONS 105, 361, 363 AND 364, F.R.B.P. 2002 AND 4001; AND LOCAL BANKRUPTCY RULES 2002-1 AND 4001-2; MEMORANDUM AND DECLARATION OF GILBERT BONILLA IN SUPPORT THEREOF**   will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On __July 29, 2011__   I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Andrew A Goodman     agoodman@goodmanfaith.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

II.  **SERVED BY ☒U.S. MAIL OR ☐OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On __July 29, 2011__   I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

Honorable Barry Russell, 255 E. Temple Street, Suite 1660, Los Angeles, CA  90012

☒ Service information continued on attached page

III.  **SERVED BY ☐PERSONAL DELIVERY, ☐FACSIMILE TRANSMISSION OR ☐EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 29, 2011 | Lee Dowding | /s/ LEE DOWDING |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| | |
|---|---|
| In re:  COLOR SPECTRUM NETWORK, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER  2:11-bk-42383-BR |

## ADDITIONAL SERVICE

**SECURED CREDITORS:**

American Business Bank
523 West Sixth St., Suite 900
Los Angeles, CA  90014

AR Funding
PO BOX 16253
Greenville, SC  92868

**20 LARGEST UNSECURED CREDITORS:**

Aetna
PO BOX 0854
Carol Stream, IL  60132

American Printing Ink
PO BOX 1085
Hixson, TN  37343

Atlas Die, LLC
6037 Collection Center Dr.
Chicago, IL  60693

City of Marietta Tax Department
PO BOX 609
Marietta, GA  30061

Coatings & Adhesives Corporation
PO BOX 1080
Leland, NC  28451

Cobb County Tax Commissioner
PO BOX 100127
Marietta, GA  30061

Fujifilm Graphic Systems
Depr AT 952142
Atlanta, GA  31192

Impact Alliance
210 Curie Drive
Alpharetta, GA  30005

Landsberg
PO BOX 201813
Dallas, TX  75320

Lindenmeyer Munroe
PO BOX 32201
Hartford, CT  06150

LIT Industrial Limited Partnership
PO BOX 6108
Hicksville, NY  11802

MEAD
PO BOX 403102
Atlanta, GA  30384

Pacesetter Graphic Service
PO BOX 499
Acworth, GA  30101

Paper Works Industries, Inc.
3573 Solutions Center
Chicago, IL  60677

Precision Corr, LLC
PO BOX 13
Monroe, GA  30655

Rock-Tenn Paperboard
PO BOX 102064
Atlanta, GA  30368

Sensomatic Electronics Corporation
Lockbox 223670
500 Ross St. 154-0460
Pittsburgh, PA  15251

Todd County Pallet, LLC
470 Old Railroad Lane
Elkton, KY  42220

Xerox Capital Services, LLC
PO BOX 827-598
Philadelphia, PA  19182

Zions First NationAl Bank
1 S. Main Street, Suite 500
Salt Lake City, UT 84133

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**